## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

**ULYSSES BRAXTON,**

    **Plaintiff,**

v.                                        Civil Action No. 1:05CV18
                                                (Judge Broadwater)

**WARDEN KEVIN WENDT;**
**A.R. TEMPLES, Supervisor of Education;**
**JOE YEAGER, Education Techinician;**
**D. McADAMS; Unit Manager;**
**A. O'DELL, Case Manger; and**
**P. SALINAS, B-3 Counselor,**

    **Defendants.**

## REPORT AND RECOMMENDATION/OPINION

### I. PROCEDURAL HISTORY

On January 26, 2005, the plaintiff, Ulysses Braxton, an inmate at FCI - Gilmer, Glenville, West Virginia, filed a *pro se* complaint against Joe Yeager pursuant to Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) alleging that his First and Eighth Amendment rights have been violated and seeking monetary and injunctive relief. On February 7, 2005, the plaintiff paid the full filing fee.

On March 11, 2005, the plaintiff filed a Notice that he was filing an amended complaint as well as an amended complaint in which he named the following individuals as parties defendant: Warden Kevin Wendt, A. R.Temples, Joe Yeager, D. McAdams, A. O'Dell, and P. Salinas.

Also, on March 11, 2005, he filed a Motion for Injunctive Relief and/or Temporary

Restraining Order. On June 28, 2005, the plaintiff filed what has been deemed amendments to his amended complaint and motion for injunctive relief and/or temporary restraining order.

This matter is pending before me for initial review and report and recommendation pursuant to LR PL P 83.02. Having screened plaintiff's complaint in accord with the local rules of this Court and in accord with the provisions of 28 U.S.C.§ 1915A[1], the undersigned concludes that the facts as the plaintiff alleges are insufficient to sustain a claim and the complaint should be summarily dismissed.

## II. **PLAINTIFF'S ALLEGATIONS**

Because the inmate copy machine had been out of order for 10 days, on June 10, 2004, the plaintiff requested that Yeager make copies for him which he needed for court. Yeager initially denied the plaintiff's request, but a few minutes later Yeager allowed him to make his copies. While Yeager charged the plaintiff for his copies, he gave another inmate who was with the plaintiff free copies. The plaintiff alleges that he was charged for his copies in retaliation for complaining that the inmate copy machine was broken and threatening to file a grievance because the staff failed to make copies for him.

Subsequently, the plaintiff filed a grievance because the other inmate was given free copies while he was required to pay for his copies. After the plaintiff filed the grievance, on June 16, 2004,

---

[1]28 U.S.C. §1915A provides, in pertinent part, that:
(a) Screening.–The court shall review...a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) Grounds for dismissal.–On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
    (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

2

an inmate approached him and asked "Are you the 'Braxton' that filed on 'Yeager' in education?" When Plaintiff replied that he was. The inmate responded "Dam [sic] man, you f---ed it up for me that's how I get my copies." The plaintiff states that the inmates's demeanor was "very intimidating and hostile." The plaintiff further states that "for days on end [he] has been scared and feared for his life; also plaintiff is paranoid to even be in the library to research his case; and for six months plaintiff was stressed with anxiety, damaged to the extent that he would often admonish –and question his actions for filing [the] grievance." (Complaint ¶37). The inmate advised the plaintiff that Yeager told him that the plaintiff had "snitched" on him.

The plaintiff further asserts that by labeling him a "snitch" Yeager was deliberately indifferent to a substantial risk of serious bodily harm.[2] He further asserts that Yeager retaliated against him as a result of the grievances he filed.

He further asserts that Wendt knew of the preferential treatment given to the other inmate. He also knew that "it was highly possible for inmates to retaliate against plaintiff as a result of Education's technician, Mr. Yeager, labeling plaintiff a 'SNITCH' at the hand of other prisoners," and that Wendt failed to take "precautionary measures in relieving any of plaintiff's anxieties and fears from possible inmate physical assaults and/or threats of violence." The plaintiff also alleges that Temples knew that Yeager retaliated against him by charging him for copies and not charging other inmates, and he knew that Yeager labeled him a "SNITCH", but took no precautionary measures to assure the plaintiff's safety. He also alleges that O'Dell knew that his job detail had been changed in retaliation for his filing a Bivens action. The plaintiff alleges McAdams retaliated

---

[2]The plaintiff filed a grievance against Yeager for labeling him a snitch. On July 14, 2004, Wendt advised the plaintiff that the matter was being investigated. Also, on August 25, 2004, the plaintiff was advised by K.M. White that an investigation was being conducted.

3

against him for filing a Bivens action by changing his work detail and increasing the amount and timing of his restitution payments. He further alleges that McAdams knows he has scoliosis of the spine and a herniated disc and that plaintiff cannot stand on his feet for prolonged periods of time. Lastly, he alleges that Salinas knew that his job and financial contract had been changed in retaliation for his filing a Bivens action, but he took no precautions to correct the retaliatory actions.

### III. **MOTION TO AMEND**

Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance to the amendment, futility of amendment, etc. -- the leave sought should, as the rule requires, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). See also Sandcrest Outpatient Services, P.A. v. Cumberland County Hosp. System, Inc., 853 F.2d 1139, 1148 (4th Cir. 1988). However, the court has the discretion to either grant or deny the motion to amend. Foman, 371 U.S. at 182.

The undersigned recommends that the motion to amend be granted because the plaintiff has not acted in bad faith and there has been no responsive pleading filed.

### IV. **ANALYSIS**

4

**A. Standard of Review**

The complaint as been reviewed pursuant to 28 U.S.C. §1915A which provides that a civil action may dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A.

A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992). Accordingly, under section 1915A, a claim based on a meritless legal theory may be dismissed *sua sponte*. See Neitzke v. Williams, 490 U.S. 319 (1989). The court may also dismiss a claim as "factually frivolous" if the facts alleged are clearly baseless. Denton, 504 U.S. at 32 (1992). In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor. Id.

"To avoid dismissal of suit as frivolous, in forma pauperis plaintiffs must meet certain minimum standards of rationality and specificity, and 'fantastic' or 'delusional' claims are insufficient to withstand charge of factual frivolity." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Further, an action is malicious when filed with "a wish to vex, annoy, or injure another, or an intent to do a wrongful act, and may consist in direct intention to injure, or in reckless disregard of another's rights." Cain v. Commonwealth of Virginia, 982 F. Supp. 1132, 1136 (E.D.Va.1997).

Additionally, dismissal for failure to state a claim is proper where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69 (1984). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which

the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, see Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct the plaintiff's legal arguments for him, see Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, see Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, the Court must accept as true the allegations set forth by the plaintiff in his complaint. See Perkins v. Kansas Department of Corrections, 165 F.3d 803 (10th Cir. 1999).

As discussed below, even under this less stringent standard, the plaintiff's complaint should be summarily dismissed because it fails to state a claim upon which relief can be granted.

**B**. **The Plaintiff has not Alleged Any Facts to State a Claim Upon Which Relief can be Granted.**

The plaintiff alleges that the defendants have deprived him of his "Eighth Amendment right to redress the court, free from retaliation, free from substantial risk of bodily harm at the hands of other inmates, and free from imminent threats of danger within the meaning of 'Deliberate Indifference.'"

**1. Eighth Amendment Claim**

The plaintiff asserts that Yeager labeled him a snitch and that it is highly possible that inmates will retaliate against him. Based on the information provided by the plaintiff, he has exhausted his administrative remedies regarding this issue.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For

6

a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id. n3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

The plaintiff does not allege facts to support a claim that the defendants were aware of any potential harm to the plaintiff or that the defendants acted with intent to cause him harm or were deliberately indifferent to his safety. Furthermore, the plaintiff does not allege facts that he was harmed or even threatened by any inmates for filing a grievance against Yeager. An "idle threat" of impending physical harm that is not carried out will not suffice to state an Eighth Amendment claim. See Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir.1992); Jenner v. McDaniel, 123 Fed.Appx. 900 (10th Cir. 2005). Moreover, "it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." Babcock v. White 102 F.3d 267, 272 (7th Cir. 1996). But see Benefield v. McDowall, 241 F. 3d 1267 (10th Cir. 2001)( finding that the plaintiff's allegations that the defendant labeled him a "snitch" which "put him in danger of attack or even death at the hands of other inmates" defeated the defendant's claim of qualified immunity even though the plaintiff sustained only psychological, not physical, injury).

7

In the instant case, no assault has occurred. While the undersigned recognizes that the plaintiff "need not wait until he is actually assaulted to obtain relief," Woodhous v. Commonwealth of Virginia, 487 F. 2d 889 (4th Cir. 1973), the plaintiff alleges no facts that he has been threatened, that an assault is imminent, or that he is at risk of harm. Instead, the plaintiff only fears as assault will occur at some point in the future. However, such fear does not give rise to a claim under the Eighth Amendment. Thus, the plaintiff has failed to state a claim that his Eighth Amendment rights were violated.

Furthermore, pursuant to 42 U.S.C. §1997e(e) "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." See Alexander v. Tippah County, Miss., 351 F. 3d 626 (5th Cir. 2003)( §1997e(e) precludes recovery for emotional and mental injuries arising from conditions of confinement without a physical injury); see also, Counts v. Newhart, 951 F.Supp. 579 (E.D. Va. 1996)(eighth amendment claims of overcrowding and inadequate medical treatment without evidence of injury could be dismissed at the outset under §1997e(e)). Consequently, the plaintiff is not entitled to compensatory damages against the defendants.

With regard to the plaintiff's request for punitive damages against the defendants the undersigned recognizes that some circuits have determined that §1999e(e) does not preclude recovery of punitive damages. However, where the punitive damages are for emotional or mental injuries, such is precluded by §1997e(e). See Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir.2000); Davis v. District of Columbia, 158 F. 3d 1342 (D.C. Cir. 1998). Consequently, the plaintiff's request for punitive damages is barred.

## 2. Retaliation

The plaintiff makes several allegations of retaliation. He alleges Yeager retaliated against him by charging him for copies and not charging other inmates; his job detail changed from Unit Orderly to Electrical One, and his amounts and timings rose under the financial responsibility program as a result of filing the complaint against Yeager.

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. §1983 must first exhaust all available administrative remedies. 42 U.S.C. §1997e. Exhaustion as provided in §1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002). Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741.

The Fourth Circuit has determined that the PLRA does not require a prisoner to allege that he has exhausted his administrative remedies. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005). The Fourth Circuit further found that exhaustion is an affirmative defense, but that a district court may dismiss the complaint where the failure to exhaust is apparent from the face of the complaint or that the court may inquire "on its own motion into whether the inmate exhausted all administrative remedies." Id. 683.

The alleged actions of the defendants constitute actions "with respect to prison conditions" within the meaning of the PLRA and the requirement of exhaustion of administrative remedies

9

applies to those actions and the alleged effects of those actions.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9), followed by an appeal to the regional director of the Federal Bureau of Prisons (BP-10). Finally, if the prisoner has received no satisfaction, he may appeal to the office of the General Counsel (BP-11). 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

The petitioner's claims of retaliation, except for his claim that he was charged for his copies in retaliation for filing complaints regarding the broken inmate copies, have not been exhausted.

Thus, the claims could be dismissed on that basis alone. However, 42 U.S.C. 1997e(c)(2) provides "[i]n the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." Thus, the undersigned has considered the merits of the claims to determine whether they state a claim upon which relief may be granted.

In order to sustain a claim based on retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). Therefore, "in forma pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to survive [§ 1915(e)(2)(B) ]." Id. Furthermore, claims of retaliation are treated with skepticism in the prison context. Cochran v.

Morris, 73 F.3d 1310, 1317 (4th Cir.1996). Additionally, a plaintiff alleging that government officials retaliated against him in violation of his constitutional rights must demonstrate, *inter alia,* that he suffered some adversity in response to his exercise of protected rights. American Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993).

First, inmates do not have a constitutional right to participate in grievance procedures. Adams, 40 F. 3d at 75. Thus, the plaintiff can state no retaliation claim regarding the filing of his grievances. " Further, while inmates have a constitutional right to meaningful access to the courts, an inmate who claims he was retaliated against for filing a lawsuit must show that the retaliatory acts adversely affected his right to access the courts. Oliver v. Powell, 250 F. Supp. 2d 593 (E.D. Va. 2002). Moreover, while the plaintiff alleges that retaliatory acts were taken in response to his filing this Bivens action, his claim fails as he has not alleged any adversity. The plaintiff does not allege that he was unable to pursue the current litigation. In fact, given the numerous filings made by the plaintiff, it does not appear that the plaintiff has suffered any harm from the alleged retaliatory acts.

Moreover, prisoners are not entitled to free, unlimited photocopies to protect the prisoner's right to access to the courts. Wanninger v. Davenport, 697 F.2d 992, 994 (11th Cir. 1983). Allowing inmates to pay for and receive photocopies of legal materials required by the Court is part of meaningful access to the courts. Johnson v. Parke, 642 F. 2d 377 (10th Cir. 1981). See also, Giles v. Tate, 907 F. Supp. 1135 (S.D. Ohio 1995).

Further, work assignments are within the discretion of prison officials. Altizer v. Paderick, 569 F.2d 812 (4th Cir.), cert. denied, 435 U.S. 1009 (1978). See also Moody v. Baker, 857 F.2d 256, 257-58 (5th Cir.1988)("[a]n inmate has neither a protectable property nor liberty interest in his

11

custodial classification, and a work assignment alone does not rise to a constitutional violation."). However, if prison officials knowingly or intentionally assigned the inmate to a work detail that they knew would aggravate the inmate's serious medical condition, such would constitute deliberate indifference to serious medical needs in violation of the Eighth Amendment. physical ailment. Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir.1989). Thus, the plaintiff does not state a claim of retaliation regarding his alleged job change. However, to the extent that he is alleging that his new job was outside his work restrictions such may state a claim. However, the plaintiff has not exhausted that issue and such issue should be dismissed.

The plaintiff also asserts that he was retaliated against because on April 25, 2005 one of his visitors was denied, because her driver's license was expired, and on June 25, 2005, another one of his visitors was denied. The petitioner's loss of visitation privileges is not a liberty interest protected under the Due Process clause. See Ware v. Morrison, 276 F.3d 385, 387 (8th Cir. 2002)(citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460-61 (1989)); White v. Keller, 438 F.Supp. 110 (D.Md.1977), aff'd, 588 F.2d 913 (1978)(prisoners do not have a constitutional right to prison visitation); Pruitt v. Moore, 2003 WL 23851094, *8 (D.S.C.2003). Thus, the plaintiff has failed to state a claim of retaliation regarding his visitation.

Lastly, the plaintiff has failed to set forth adequate facts that the amount and timing of his IRFP payments were increased in retaliation for filing the instant action. Bare allegations of retaliation are insufficient to state a claim. Adams, supra.

## V. MOTION FOR INJUNCTIVE RELIEF AND/OR TEMPORARY RESTRAINING ORDER

The plaintiff alleges that he is entitled to temporary restraining order because he believes at least two defendants will engage in numerous activities in an attempt to have the plaintiff "hurt or

possibly killed in retaliation" for bringing this action, placed in the special housing unit, harassed; and transferred. He also wants the defendants to be enjoined from destroying his legal material and separating him from his legal material.

The standard for preliminary injunctions in the Fourth Circuit is established by <u>Blackwelder Furniture Co. v. Seilig Mfg. Co.</u>, 550 F.2d 189 (4th Cir. 1977). Four factors must be considered:

> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,
> (2) the likelihood of harm to the defendant if the requested relief is granted,
> (3) the likelihood that the plaintiff will succeed on the merits, and
> (4) the public interest.

<u>Direx Israel, Ltd v. Breakthrough Medical Corp.</u>, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." <u>Id.</u> (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. <u>Id.</u> The required harm "must be neither remote nor speculative, but actual and imminent." <u>Id.</u> (citations and internal quotation omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. <u>Id.</u> (citation omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 926 F.2d 353, 359 (4th Cir. 1991) (citations omitted).

The undersigned recommends that the plaintiff's motion be denied because the plaintiff provides absolutely no factual basis to support his numerous allegations of <u>potential</u> retaliation.

## VI. **RECOMMENDATION**

In consideration of the foregoing, the undersigned recommends that the plaintiff's motion to amend be granted, that his complaint and amended complaint be dismissed with prejudice and dismissed from the docket pursuant to 28 U.S.C. §1914A for failure to state a claim, and that the plaintiff's Motion for Injunctive Relief and/or Temporary Restraining Order be denied.

Any party may file within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable W.Craig Broadwater, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and

Recommendation/Opinion to the *pro se* plaintiff.

DATED:	August 22, 2005

                              **/s** *John S. Kaull*

                              JOHN S. KAULL
                              UNITED STATES MAGISTRATE JUDGE